In re PRESQUE ISLE
APARTMENTS, L.P., Debtor.

PRESQUE ISLE APARTMENTS,
L.P., Movant,

v.

LANDMARK SAVINGS
ASSOCIATES, Respondent.

Bankruptcy No. 87–00645E.
Motion No. 89–586.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 28, 1990.

Stephen H. Hutzelman, Erie, Pa., for movant.

Edward T. Harvey, Pittsburgh, Pa., for respondent.

Richard Jankell, New York City, for Rosalind Cohen, Joseph Cohen, Stanford Klapper, Richard Jankell, Northwestern Nat.

Ins. Co. of Milwaukee, Wisconsin, and Edward S. Markman.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

Presque Isle Apartments, L.P. ("Debtor") filed its petition under Chapter 11 of the Bankruptcy Code on February 12, 1987. Landmark Savings Association, formerly known as Second Federal Savings and Loan Association of Pittsburgh ("Landmark") holds a first mortgage note on the debtor's 96 unit apartment complex.

The lien position of Landmark had its genesis when Country Place Apartments Associates executed a note (the "Original Note") in the amount of $1,250,000.00 on August 23, 1978 in favor of Landmark. The debtor later purchased the property from Country Place Apartments Associates, subject to the existing loan obligation with Landmark. On February 1, 1984, the debtor executed a Promissory Mortgage Note ("Note") in the amount of $1,165,-167.61 for the same obligation in favor of Landmark. This Note was also secured by a Mortgage Modification and Assumption Agreement ("Modification") dated February 1, 1984.

The debtor filed this Motion for Determination of Lien Status to resolve disputes over terms of the debt obligation.

### Issues

1. What rate of interest applies upon default?

2. Does the Pennsylvania judgment rate of interest apply after entry of judgment in mortgage foreclosure?

3. What late charges may be assessed on the Note?

4. What is the proper allocation of payments made on the Note?

### A. Default Rate of Interest

The Original Note provided for interest on the unpaid principal balance of 9¾ percent per annum. It also provided for a default rate of interest of 9¾ percent per annum. The Modification provided that the terms of the Original Note remained in effect except as specifically stated in the Modification. The Modification changed the regular rate of interest from 9¾ percent to 1½ percent above the current Mellon Bank, N.A. prime rate, with a floor of 10½ percent and a ceiling of 15 percent. The Modification provides:

> Irrespective of the movement of the prime interest ... at no time during the terms of this loan will the effective interest rate under this loan exceed FIFTEEN PERCENT (15%) nor be reduced below TEN AND ONE–HALF PERCENT (10½%).

The Modification contains no express provision for a default rate of interest. It is the debtor's position that, since the Modification contains no express provision for a default rate of interest, the 9¾ percent default rate stated in the Original Note applies. We are not persuaded by the debtor's argument.

The intention of the parties is controlling in construing an agreement. See, Burns Manufacturing Co. Inc. v. Boehm, 356 A.2d 763, 467 Pa. 307 (1976); Robert F. Felte, Inc. v. White, 302 A.2d 347, 451 Pa. 137 (1973).

Although the Modification did not expressly provide for a default rate of interest, it did expressly provide that the interest rate during the term of the loan would not be reduced below 10½ percent.

It is most likely that the parties intended the default rate of interest to equal the regular rate of interest as it did in the Original Note. After default, the credit risk has become greater. It is unlikely that the parties would have intended to negotiate a lower rate after default. We find that the default rate of interest is equal to the regular rate of interest.

### B. Judgment Rate of Interest

Landmark brought an action in mortgage foreclosure and by consent of the parties on February 12, 1986, a judgment was entered against the debtor's property on February 18, 1986. The debtor argues that

after judgment, Landmark is only entitled to the 6 percent legal rate of interest.

Landmark asserts that the judgment rate of interest does not apply as an action in mortgage foreclosure is an action in rem only and does not impose personal liability upon the mortgagors.

■■■ We agree that Landmark's judgment is a judgment in rem and not a judgment against the debtor personally. *Meco Realty Corp. v. Burns*, 200 A.2d 869, 414 Pa. 495 (1964). However, the judgment is for a specific sum of money and is conclusive as between the parties as to the amount due.

■■■ Landmark is entitled to the contractual rate of interest on the Note *so long as* Landmark's claim is based on the Note. *In re Crane Automotive, Inc.*, 98 B.R. 233 (Bankr.W.D.Pa.1989) (citations omitted). A mortgage merges with a judgment in foreclosure. *In re Herbert*, 86 B.R. 433 (Bankr.E.D.Pa.1988). Once a claim is reduced to judgment, the legal rate of interest applies unless the documents evidence a clear intent to continue the contractual rate of interest post-judgment. *Crane*, 98 B.R. 233. Landmark's documents reveal no such intent. Therefore, after entry of judgment on February 18, 1986, Landmark is only entitled to the legal rate of interest as long as the obligation is based upon the judgment. The legal rate of interest in Pennsylvania is 6 percent. 41 Pa.Stat.Ann. § 202 (Purdon 1989).

■■ The parties to a note or mortgage may agree to a contractual rate of post-judgment interest in excess of 6 percent. *Sicari v. Barua*, 43 Pa.D & C 3d 647 (Somerset Co. C.P.1986); *Dunbar v. Dunbar*, 9 Pa.D & C 3d 214, 218 (Allegheny Co. C.P.1977).

■■ The mortgage and Note between the parties were merged into the judgment on February 18, 1986. However, we find that the parties agreed to revive the mortgage and Note and reinstitute the terms and conditions by their Agreement dated August 27, 1987 which states:

9. Except as specifically stated herein or as limited by the Bankruptcy Code, all terms and conditions of the mortgage and note between the parties shall remain in full force and effect.

Therefore, interest on the Note shall be calculated as follows:

1) From the date of the Note until February 18, 1986: Mellon Bank, N.A. prime rate plus 1½ percent, subject to a floor of 10½ percent and a ceiling of 15 percent.

2) February 19, 1986 through August 27, 1987: the judgment rate of interest of 6 percent.

3) August 28, 1987 to the present: Mellon Bank, N.A. prime rate plus 1½ percent, subject to a floor of 10½ percent and a ceiling of 15 percent.

### C. Late Charges

Bankruptcy Code § 506(b) permits an oversecured creditor "any reasonable fees, costs or other charges provided for under the agreement under which such claim arose." The parties agree that Landmark is an oversecured creditor.

Paragraph 15 of the Note provides that if a payment is more than 15 days overdue, that "the Borrower [the debtor] agrees to pay a late charge in an amount not exceeding six (6%) percent of any such overdue payment as compensation for the additional service resulting from the default."

Landmark assessed the debtor a 4 percent late charge each month from May 1985 through April 1987. Landmark then assessed a 6 percent late charge for each month from May 1987 through January 1988 after which the account became current.

By letter dated September 2, 1988, Landmark advised the debtor that the 4 percent late charges assessed from May 1985 through April 1987 were incorrect and should have been 6 percent. Landmark requested an additional amount of $5,490.41 in late charges.

The debtor asserts that a 6 percent late charge is unreasonable and that there is nothing to justify an increase from 4 percent to 6 percent after the debtor filed its petition in bankruptcy. The debtor further

asserts that, even though the account was not contractually current between April 1987 and January 1988, payments were made each month and therefore, no late charges should be imposed for those months.

■ When a late charge is reasonable and provided for in the security agreement, said charge is allowable to an oversecured creditor such as Landmark. *In re Mack Financial Corp.*, 789 F.2d 1083 (4th Cir. 1986); *In re Dalessio*, 74 B.R. 721 (9th Cir.BAP 1987).

■ The Note provided for a late charge of *up to* 6 percent. Landmark apparently determined that 4 percent was reasonable to compensate it for additional expenses incurred due to late payments. Having determined that 4 percent was reasonable, Landmark cannot retroactively increase the late charge to 6 percent. Further, the filing of the debtor's bankruptcy petition does not justify an increase to 6 percent.

■ Pennsylvania law allows banks and savings associations to "make a single delinquency charge for each payment in arrears for a period of more than fifteen days other than by reason of an acceleration or by reason of a delinquency on a prior payment." 7 Pa.Stat.Ann. § 310(d)(vi) (Purdon, 1989); 7 Pa.Stat.Ann. § 505(d)(vi) (Purdon, 1989).

Thus, it is clear that under Pennsylvania law, late charges may not be imposed because of delinquencies caused by acceleration or caused by an earlier delinquency which has the effect that subsequent payments are each received later than required by the original schedule of payments.

■ The debtor made no payments from May 1985 through the time of entry of judgment in February 1986. Landmark is entitled to reasonable late charges for these months. We find the reasonable late charges to be four (4%) percent of each delinquent payment.

■ Landmark is not entitled to late charges for the months of March 1986 through August 1987, the period during which the debtor's obligation was based on the judgment.

■ Although the debtor's obligation was not contractually current between August 1987 and January 1988, the debtor paid Landmark the payment amount each month. The delinquency in those months was caused solely by an earlier delinquency. Therefore, under Pennsylvania law, 7 Pa.Stat.Ann. § 310 and § 505, Landmark is not entitled to late charges for those months.

## D. Application of Payments

The debtor disputes Landmark's application of $18,890.37 in payments to late charges in February 1988 and application of $20,000 to attorney fees in May 1989.

Paragraph 3 of the Uniform Covenants to the original mortgage ("Paragraph 3") directs the application of payments as follows:

> Unless applicable law provides otherwise, all payments received by the Lender under the Note and paragraphs 1 and 2 hereof [1) payment of principal and interest and 2) escrow for taxes and insurance] shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 [escrow for taxes and insurance], then to interest payable on the Note, next to principal of the Note, and last to any other sums secured by this Mortgage.

■ It is Landmark's position that Paragraph 3 does not apply following default since the debtor was in breach. In the alternative, it is Landmark's position that it may apply payments differently under other provisions of the original mortgage. Landmark also asserts that the debtor acquiesced to a different application of payments when it was notified by Landmark's letter of May 4, 1987 of the method Landmark would apply payments and that its application of payments was done in conformity with § 506(b) of the Bankruptcy Code. It is the debtor's position that late charges and attorney fees are fourth priority items under Paragraph 3; that Landmark is bound by those terms and there-

fore, Landmark cannot be paid for late charges and attorney fees until after the principal has been paid in full.

It is clear that the parties did not intend for the provisions of the original mortgage to cease effect upon default. On the contrary, the mortgage provides various remedies upon default, but nowhere does the mortgage become null and void.

 § 506(b) of the Bankruptcy Code provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The parties agree that Landmark is oversecured. Therefore, Landmark is entitled to late charges and reasonable attorney fees approved by this court.

 § 506(b) provides only for the allowance of such charges. It does not require current payment of such amounts. *See 3 Collier on Bankruptcy*, ¶ 506.05 at 50643 (15th ed. 1985); *In re Southeast Co.,* 868 F.2d 335, 340 (9th Cir.1989). Entitlement to current payment of such amounts must be grounded elsewhere, such as in the provision of adequate protection or in any underlying agreements. *In re Hynson,* 66 B.R. 246 (Bankr.D.N.J.1986).

 Paragraph 8 of the Uniform Covenants to the Original Mortgage ("Paragraph 8") provides:

If Borrower fails to perform the covenants and agreements contained in the Mortgage, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender including ... proceedings involving a bankrupt ... the Lender may disburse ... attorney's fees.... Any amount disbursed ... with interest thereon, shall become additional indebtedness of Borrower secured by the Mortgage.... Such amounts shall be payable upon no-

tice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate stated in the Note.... Borrower shall have the right to repay such amounts in whole or in part at any time....

Paragraph 8 permits Landmark to add attorney fees approved by this court to the principal balance and accrue interest thereon at the applicable rate of interest. Paragraph 8 does not permit Landmark to alter the method of application of payments as stated in Paragraph 3.

 Attached to Landmark's brief submitted to this court, marked Defendant's Exhibit E, is a copy of Landmark's May 4, 1987 letter to the debtor. The pertinent part of this letter states:

The Note provides for the monthly payments, and other amounts received, to be applied to accounts receivable in the following manners: first—escrow payment for real estate taxes and insurance; second—payment of delinquent and current interest; and third—principal reduction.

Landmark claims the debtor acquiesced to a different application of payments when it was notified of a change by this letter. We do not believe the mere receipt of a letter by the debtor constitutes acquiescence. Furthermore, the debtor would agree with this letter, as the letter calls for application of payments in the same manner as does Paragraph 3.

We believe Landmark may be referring to its letter to the debtor dated September 2, 1988 regarding late charges. This letter sets forth the date late charges were assessed, the amount of late charges collected, the correct late charge, and a balance due for late charges. Landmark did not specifically inform the debtor that its method of application of payments was varied from the terms of Paragraph 3 and further, the debtor never responded accepting the collection of late charges prior to payment of principal in full.

Therefore, late charges are not yet due and payable. Landmark may not change

the application of payments from the stated application in Paragraph 3.

An appropriate order, in accordance with the foregoing, will be entered.

## ORDER

This 28 day of March, 1990, in accordance with the accompanying OPINION, it shall be, and hereby is, ORDERED:

1. Landmark Savings Association is entitled to interest on the Promissory Mortgage Note, executed by Presque Isle Apartments, L.P., on February 1, 1984, at a rate of interest which equals the Mellon Bank, N.A. prime rate plus 1½ percent, subject to a floor of 10½ percent and a ceiling of 15 percent for the period until the entry of judgment on February 18, 1986 and from August 28, 1987 to the present time.

2. Landmark Savings Association is entitled to the Pennsylvania judgment rate of interest of 6 percent on the Promissory Mortgage Note executed by Presque Isle Apartments, L.P. from February 19, 1986 through August 27, 1987.

3. Landmark Savings Association shall add attorney fees to the principal balance of the note as of the date of court approval and accrue interest thereon at the applicable rate of interest.

4. Landmark Savings Association may impose a late charge of 4 percent on payments that were due for the months from May 1985 through February 1986. Late charges are not due and payable until the principal amount of the note is paid in full.