OPINION OF THE COURT
HUTCHINSON, Circuit Judge.
The Federal National Mortgage Association (“FNMA”) appeals a decision of the United States District Court for the Eastern District of Pennsylvania in favor of appellees Anthony and Loretta Stendardo
(the “Debtors”). In re Stendardo, 139 B.R. 128 (E.D.Pa.1992) (“Stendardo II"). The Debtors owned property subject to a mortgage assigned to FNMA. They later filed for bankruptcy. The bankruptcy court held that FNMA was entitled to include in its proof of claim real estate taxes and insurance premiums it paid after filing a mortgage foreclosure and obtaining a default judgment against the Debtors’ property. See In re Stendardo, 117 B.R. 833 (Bankr.E.D.Pa.1990) (“Stendardo F). The Debtors appealed to the district court, which reversed, reasoning that the debtor’s obligations under the mortgage were merged into the judgment obtained in the foreclosure action. We will affirm.
The bankruptcy court exercised subject matter jurisdiction under 28 U.S.C.A. §§ 157(b), 1334(b). The district court exercised appellate jurisdiction under 28 U.S.C.A. § 158(a). This Court exercises appellate jurisdiction under 28 U.S.C.A. § 158(d). See Allegheny Int’l, Inc. v. Allegheny Ludlum Steel Corp., 920 F.2d 1127, 1131-1132 (3d Cir.1990).
I. Factual & Procedural History
Pasquale and Kathryn Stendardo owned property located at 2716 East Birch Street in Philadelphia (the “Property”) as trustees for appellee Anthony Stendardo. On October 26, 1970, Pasquale and Kathryn obtained a mortgage loan in the amount of $7,250.00 payable over twenty years at an interest rate of 8.5% from Bogley, Harting, Mahoney and Lebling, Inc. (“Bogley Harting”). A promissory note dated October 26, 1970 memorialized this loan (the “Note”). A first mortgage against the Property, also dated October 26, 1970 (the “Mortgage”), secured the loan. On November 17, 1970, Bogley Harting assigned the Note and the Mortgage to FNMA.
The Mortgage provides in pertinent part:
2. That in order more fully to protect the security of this mortgage, the Mortgagor, together with, and in addition to, the monthly payments of principal and interest payable under the terms of the note secured hereby, covenants to pay to the Mortgagee, on the first day of each *1092 month until the said note is fully paid, the following sums:
(a) An amount sufficient to provide the holder hereof with funds to pay the next mortgage insurance premium....
(b) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the premises secured hereby, plus taxes and assessments next due on the premises covered hereby (all as estimated by the Mortgagee) ...; and
(c) All payments mentioned in the two preceding subsections of this paragraph and all payments to be made under the note secured hereby shall be added together and the aggregate amount thereof shall be paid by the Mortgagor each month in a single payment. ...
Any deficiency in the amount of such aggregate monthly payment shall, unless made good by the Mortgagor prior to the due date of the next such payment, constitute an event of default under this mortgage, and the entire mortgage shall become due at the option of the holder hereof....
5. That the Mortgagor will not suffer any lien superior to the lien hereby created to attach to or to be enforced against the premises....
6. That the Mortgagor will pay all ground rents, taxes, assessments, water rates, and other governmental or municipal charges, fines or impositions, for which provision has not been made here-inbefore and that he will promptly deliver the official receipts therefor to the Mortgagee, and in default thereof the Mortgagee shall have the right to pay same. The Mortgagee shall have the right to make any payment which the Mortgagor should have made, and the Mortgagee may also pay any other sum that is necessary to protect the security of this instrument. All such sums, as well as all costs, paid by the Mortgagee pursuant to this instrument, shall be secured hereby and shall bear interest at the rate set forth in the note secured hereby from the date when such sums are paid.
* * * * * *
AND PROVIDED ALSO, that when as soon as the principal debt and sum hereby secured shall become due and payable as aforesaid, or in case default shall be made in the payment of any installment of principal and interest, or any monthly payment hereinabove provided for, ..., it shall and may be lawful for said Mortgagee forthwith to bring an Action of Mortgage Foreclosure, ... or to institute other foreclosure proceedings upon this mortgage, and to proceed to judgment and execution for recovery of said principal debt, all interest thereon, all sums advanced for payment for any ground rent, taxes, water rents, charges, claims or insurance premiums as aforesaid....
Appellant’s Appendix (App.) at 59-60. Pasquale and Kathryn Stendardo transferred ownership of the Property to the Debtors by deed on June 7, 1972, under and subject to the Note and Mortgage.
On May 30, 1985, the Debtors filed their first voluntary Chapter 13 petition in bankruptcy (the “First Bankruptcy”). FNMA filed a proof of claim and later obtained relief from the automatic stay in order to prosecute a mortgage foreclosure action. The First Bankruptcy was voluntarily converted to a Chapter 7 liquidating bankruptcy on October 16, 1986. FNMA filed a mortgage foreclosure action and obtained a default judgment against the Debtors on February 11, 1987 in the amount of $6,391.09 (the “Judgment”).
In order to protect its security interest in the property, FNMA paid insurance premiums and real estate taxes levied against the Property when the Debtors failed to pay them after the Judgment was entered (the “Post-Judgment Expenses”). Between February 18,1987 and June 14,1990, FNMA paid $1,804.25 in real estate taxes, $23.37 in Federal Housing Administration (“FHA”) insurance premiums, and $2,323.00 in hazard insurance premiums. These payments were necessary in order for FNMA to maintain FHA mortgage in *1093 surance on the loan. The Debtors did not request FNMA to make any of these payments. Stendardo I, 117 B.R. at 835.
The Debtors obtained a discharge in the First Bankruptcy on January 10, 1989. They filed their presently pending Chapter 13 bankruptcy one month later on February 10, 1989 (the “Second Bankruptcy”). See In re Stendardo, Ch. 13 Case No. 10581S (Bankr.E.D.Pa.).[1] FNMA filed a proof of claim in the Second Bankruptcy on January 10, 1990. This proof of claim, which included amounts representing both the Judgment and the Post-Judgment Expenses, as well as attorney’s fees and costs, totaled $14,026.64.
The Debtors filed an adversary proceeding attacking FNMA’s proof of claim on May 10, 1990 in the bankruptcy court. Although the parties resolved by stipulation many of the Debtors’ objections to FNMA’s proof of claim,[2] they were unable to resolve their objection to inclusion of the Post-Judgment Expenses. Stendardo I, 117 B.R. at 834. The parties submitted this controversy to the bankruptcy court for resolution on the pleadings, briefs, and factual stipulations.
By order dated August 29, 1990, the bankruptcy court held that FNMA was entitled to include the Post-Judgment Expenses in its proof of claim. Id. at 834. The court first held that “although a mortgage merges into a judgment, the lien created by the mortgage remains despite the presence of the judgment.” Id. at 838. Accordingly, the bankruptcy court concluded that the doctrine of merger did not render null and void the mortgage terms imposing on the Debtors the obligation to pay insurance premiums and real estate taxes. As a result, FNMA was allowed to add the Post-Judgment Expenses to the amount of its secured claim. Id. at 838-39. In the alternative, the bankruptcy court held that even if such a merger occurred, FNMA could include the Post-Judgment Expenses in its secured claim under a theory of unjust enrichment because FNMA’s payments clearly conferred benefits upon the Debtors who retained an independent legal obligation to pay these costs. Id. at 840-41.
The district court vacated and remanded. In order for mortgage terms to survive merger into a foreclosure judgment, it decided that the language of the mortgage must clearly indicate that a term or clause in an agreement will remain operative after a judgment is obtained. Stendardo II, 139 B.R. at 131 (citing In re Presque Isle Apartments, 112 B.R. 744, 747 (Bankr.W.D.Pa.1990)). The language in the Mortgage here only mentions the Debtors’ obligation to pay the relevant taxes and insurance premiums while the Mortgage is in effect. It does not provide that this obligation is to continue after a judgment is obtained. Based on this reasoning, the district court concluded that the Mortgage is unambiguous as a matter of law and not reasonably susceptible to the bankruptcy court’s interpretation that the Debtors’s obligation to pay the expenses at issue extends beyond the date of judgment. Id.
The district court then addressed the bankruptcy court’s alternative holding. Id. It first factually distinguished the cases upon which the bankruptcy court relied in determining that the Debtors had a legal obligation, independent of the Mortgage, to make the expenditures at issue. These cases, opined the district court, are inappo-site because they involve pre-foreclosure obligations of a debtor who is a party to an installment land sale contract. Id. at 131—32 (citing In re Rowe, 110 B.R. 712, 714-15 (Bankr.E.D.Pa.1990); In re Capodanno, 83 B.R. 285, 286-88 (Bankr.E.D.Pa.1988); In re Fox, 83 B.R. 290, 290-91 (Bankr.E.D.Pa.1988)).
The district court also held that FNMA could not rely on the doctrine of unjust enrichment to recover the Post-Judgment *1094 Expenses because no evidence in the record established either that the Debtors benefit-ted from FNMA’s payments or that the Debtors had notice that FNMA was making the payments and that it expected to be reimbursed. Id. at 132. Accordingly, the district court refused to allow FNMA to include in its secured proof of claim the Post-Judgment Expenses.[3] Id.
The district court denied FNMA’s motion for reconsideration on April 22, 1992. FNMA filed its notice of appeal on May 20, 1992.
II. Analysis
FNMA presents three issues to this Court for resolution. We will discuss only two of them.[4] First, FNMA argues that the clause in the mortgage contract allowing it to recover certain expenses from the Debtors did not merge into the default judgment. Second, FNMA maintains that even if the clause did merge, it could recover its Post-Judgment Expenses on a theory of either subrogation or unjust enrichment. Because the district court sits as an appellate court in bankruptcy cases, our review of the district court’s decision is plenary. Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3d Cir.1988) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir.1981)). This Court’s standard of review is clearly erroneous as to findings of fact by the bankruptcy court, and plenary as to conclusions of law. Bankruptcy Rule 8013, 11 U.S.C.A. (West Supp.1992); Brown, 851 F.2d at 84; Universal Minerals, 669 F.2d at 101-02.
Resolution of the issues presented requires an examination of the terms of the Mortgage. “The process of interpreting a document is potentially a two-step pro-cess....” Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 362 (3d Cir.1987). The preliminary inquiry is to determine whether the terms at issue are ambiguous. This is a question of law. Id. A term is ambiguous if it is susceptible to two reasonable alternative interpretations. Mellon Bank v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir.1980). If the court determines that a given term in a contract is ambiguous, then the interpretation of that term is a question of fact. Ram Constr. Co. v. American States Ins. Co., 749 F.2d 1049, 1052 (3d Cir.1984). The intent of the parties to a contract is likewise a question of fact. Tigg, 822 F.2d at 362.
A. The Merger Issue
1. Intent of the Parties
Under controlling Pennsylvania law, “[i]t is elementary that judgment settles *1095 everything involved in the right to recover, not only all matters that were raised, but those which might have been raised. The cause of action is merged in the judgment which then evidences a new obligation.” Lance v. Mann, 360 Pa. 26, 60 A.2d 35, 36 (1948) (citations omitted). The doctrine of merger of judgments thus provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties. In re Presque Isle Apartments, 112 B.R. 744, 747 (Bankr.W.D.Pa.1990); see In re Herbert, 86 B.R. 433, 436 (Bankr.E.D.Pa.1988) (“The Debtor is, in our view, correct in her assertion that ‘[t]he mortgage is merged in a judgment entered in a mortgage foreclosure action’ in Pennsylvania.”) (quoting 25 P.L.E. 85 (1960); citing Murray v. Weigle, 118 Pa. 159, 11 A. 781, 782 (1888); Hartman v. Ogborn, 54 Pa. 120, 122-23 (1867)); see also In re Roach, 824 F.2d 1370, 1377 (3d Cir.1987) (“In New Jersey, as in many states, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished. As a result of this merger, there is no longer a mortgage_”) (citations omitted).
For example, bankruptcy courts have consistently held that the doctrine of merger under Pennsylvania law entitles a mortgagee post-judgment to the legal rate of interest rather than the rate specified in the mortgage. Because the mortgage merges into the judgment, its terms specifying the contractual interest rate no longer exist to bind the parties. See, e.g., Presque Isle, 112 B.R. at 747; In re Rorie, 98 B.R. 215, 218-19 (Bankr.E.D.Pa.1989); In re Smith, 92 B.R. 127, 129-31 (Bankr.E.D.Pa.1988), rev’d on other grounds, Smith v. Kissell Co., 98 B.R. 708 (E.D.Pa.1989); Herbert, 86 B.R. at 436.
There is an exception to this doctrine. Parties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment. See, e.g., Presque Isle, 112 B.R. at 747 (“Once a claim is reduced to judgment, the legal rate of interest applies unless the documents evidence a clear intent to continue the contractual rate of interest post-judgment.”) (citing In re Crane Automotive, Inc., 98 B.R. 233 (Bankr.W.D.Pa.1989)); see also Burns Mfg. Co. v. Boehm, 467 Pa. 307, 356 A.2d 763, 766 n. 3 (1976) (parties’ intent controlling in construing agreement); accord Robert F. Felte, Inc. v. White, 451 Pa. 137, 302 A.2d 347 (1973). The applicability of this exception will determine whether the instant Mortgage clause requiring the Debtors to pay the expenses at issue survived the Judgment.[5]
Presque Isle is instructive on this point. There the creditor brought an action in mortgage foreclosure and obtained a judgment against the debtor’s property. Pres-que Isle, 112 B.R. at 746. In calculating interest on the note accompanying the mortgage, the bankruptcy court held that the creditor was entitled to the higher interest rate specified in the mortgage up until the entry of the judgment on February 18, 1986. Id. at 746-47. After the judgment was entered, however, the mortgage merged into the judgment, and the creditor was entitled only to the lower legal rate of interest. Id. at 747. This low rate remained in effect from February 19 until the parties agreed to revive the mortgage and note by an agreement dated August 27, thereby reinstating the pre-existing terms and conditions. Id. The clear and unambiguous revival language in the agreement provided: “Except as specifically stated herein or as limited by the Bankruptcy Code, all terms and conditions of the mortgage and note between the parties shall remain in full force and effect.” Id. Thus, after the August 27 reinstatement, the original higher rate applied.
No language appears in the Mortgage at issue here that indicate the parties’ intent to preserve the Debtors’ obligation to pay the relevant taxes and premiums *1096 beyond the date of the Judgment. Although the Mortgage clearly obliges the Debtors to pay the taxes and insurance premiums at issue, it lacks any language indicating that this obligation is to survive foreclosure. The parties could have easily included such a provision in the Mortgage had this been their intent. As written, the Mortgage is unambiguous. It does not require the Debtors to pay real estate taxes and insurance premiums following the merger of the Mortgage into the Judgment.
FNMA argues that the language in the Mortgage is strikingly similar to language that the bankruptcy court recently found indicative of the parties’ clear intent to continue a contractual obligation beyond the entry of judgment. In the case of In re Clark Grind & Polish, Inc., 137 B.R. 172 (Bankr.W.D.Pa.1992), the debtor had purchased substantially all of the assets of the creditor. In consideration for the purchase, the debtor executed a judgment note, a mortgage on the real estate transferred to the debtor, and an asset purchase agreement. Id. at 173. After the debtor filed bankruptcy, the creditor filed an application for allowance of attorney’s fees and costs as part of its secured claim against the debtor under 11 U.S.C.A. § 506(b). Id. The debtor argued that the creditor’s right to additional attorney’s fees and costs merged with the judgment it had obtained under a confession of judgment clause in the note. Id. at 175.
There the bankruptcy court concluded that any right the creditor had to attorney’s fees and costs under the note was extinguished once it entered judgment. Id. (citing In re Schwartz, 77 B.R. 177, 180 (S.D.Ohio 1987), aff'd, 87 B.R. 41 (S.D.Ohio 1988)). The court went on to hold, however, that the rights created by the continuing lien of the secured creditor’s mortgage and the asset purchase agreement securing the debtor’s obligation were not extinguished until the creditor received payment. Id. (citing Schwartz, 77 B.R. at 180-81). The bankruptcy court held that the lien remained independent of the judgment on the note. Id.; see Restatement (Second) of Judgments § 18-cmt. g (1982) (if creditor has lien upon property of debtor and obtains judgment against debtor, creditor does not thereby lose benefit of lien). There, specific language in the mortgage, also incorporated into the note and the asset purchase agreement, provided for survival of the creditor’s recovery of attorney’s fees and costs:
In case [of] default ... foreclosure proceedings may be brought ... on this Mortgage and prosecuted to judgment, execution and sale for the collection of the same, together with costs of suit and an attorney’s commission for collection of the total indebtedness.
Id. at 174. Accordingly, the court decided in Clark that this language demonstrated the parties’ intent that the creditor was entitled to compensation for attorneys’ fees and costs in executing its judgment:
Between the time of judgment and the time the secured creditor receives payment, the secured creditor may be required to make additional expenditures to protect its security interest and its collateral. The amount of fees asserted in the judgment is not binding where there is an intent to allow the secured creditor to recoup its costs in fully realizing upon its claim. Such costs include defending the claim in bankruptcy proceedings.
The Mortgage and Asset Purchase Agreement contemplate that liability for fees and costs would continue until the debt was paid. [The secured creditor] may include these charges as part of its secured claim subject to this Court’s determination of the reasonableness of such charges.
Id. at 175 (citations omitted).
The language in the Clark mortgage is almost identical to the language in the Mortgage at issue here, which provides
that ... in case default shall be made in the payment of any installment of principal and interest, or any monthly payment hereinabove provided for, ... it shall and may be lawful for said Mortgagee forthwith to bring an Action of Mortgage Foreclosure, ... or to institute oth *1097 er foreclosure proceedings upon this mortgage, and to proceed to judgment and execution for recovery of said principal debt, all interest thereon, all sums advanced for payment of any ground rent, taxes, water rents, charges, claims or insurance premiums as aforesaid. ...
App. at 60 (emphasis added).
Despite the similarity of language, Clark is distinguishable from the present case. The creditor in Clark obtained a confessed judgment on the promissory note. Notwithstanding the judgment, the mortgage and asset purchase agreement independently provided for the creditor’s recoupment of attorneys’ fees and costs. The confessed judgment on the promissory note did not extinguish the independent provisions of the mortgage and asset purchase agreement.
In the present case, FNMA obtained a default judgment in foreclosure on the Mortgage itself. FNMA argues that “the provisions of the Mortgage which allow FNMA to add the Post-Judgment Expenses to its secured claim are incorporated into FNMA’s Note which arguably survives merger as well.” Brief for Appellant at 32 n. 10 (citing App. at 57). The Note and the Mortgage, “although separate and distinct instruments, are securities for one and the same debt.” 2 Ladner on Conveyancing in Pennsylvania § 12.01, at 4 (John Makdi-si ed., rev. 4th ed. 1979). A mortgagee is not limited to a single remedy upon default, but he cannot recover, in the aggregate, more than he is owed. Id. § 12.09(f), at 18. Here, FNMA admits that the value of the Property is at least $7,000.00 greater than FNMA’s secured claim, including the Post-Judgment Expenses. To decide that the Mortgage, but not the Note, merged with the Judgment would enable FNMA to obtain double recovery by execution on the Judgment in foreclosure, followed by execution on the Judgment obtained on the Note securing or evidencing the same debt as the Mortgage.
FNMA’s argument also ignores the fact that the Mortgage ceased to exist when judgment was entered. Thus, even if the Note had survived the merger, there would be no Mortgage terms remaining for incorporation in the Note. Unlike the mortgage in Clark, the Note here does not independently provide for the Debtors’ obligation to pay the Post-Judgment Expenses. This Court agrees with the district court’s holding that the terms of the Mortgage did not, as a matter of law, indicate the parties’ intent that the Debtors pay the Post-Judgment Expenses. Thus, because the Mortgage merged into the Judgment, FNMA may not recover its Post-Judgment Expenses for taxes and insurance from the Debtors.
2. FNMA’s Other Arguments
a. Statutory Cure
FNMA argues, however, that even if merger does extinguish the Debtor’s obligation on the mortgage it should still prevail. Because both Pennsylvania and federal law require payment of Post-Judgment Expenses before a debtor can cure his default and reinstate his mortgage, FNMA contends the terms of the mortgage are not extinguished upon entry of a default judgment. See Brief for Appellant at 21-24 (citing 11 U.S.C.A. § 1322(b) (West 1979 & Supp.1992); Pa.Stat.Ann. tit. 41, § 404. (1992) (hereinafter “Act 6”)). FNMA fails to mention that it has already raised this argument in another case in the context of post-judgment interest rates only for the bankruptcy court emphatically to reject it. See Herbert, 86 B.R. at 436.
In Herbert the bankruptcy court explained,
Unlike FNMA, we find no indicia that Act 6 effected any change in these longstanding principles of Pennsylvania law. Act 6 indeed does allow the mortgagor a pre-sale right to cure or redeem a mortgage and, if the deficiency is cured, the parties are returned to the status quo ante, including the restoration of the mortgage. See 41 P.S. § 404(c). However, we fail to see why this fact should effect any change in the legal status of the mortgagor and mortgagee when, as *1098 here, the mortgagor does not cure the delinquency.
Id. The same rationale applies to 11 U.S.C.A. § 1322(b), which gives the debtor the right to cure a mortgage after judgment only to the extent state law allows. See, e.g., In re Brown, 75 B.R. 1009 (Bankr.E.D.Pa.1987) (section 1322 did not permit Chapter 13 debtors to cure mortgage delinquency in bankruptcy proceeding filed after foreclosure sale because under Pennsylvania law, debtor’s right to cure delinquency expired when property sold); see also In re Roach, 824 F.2d at 1379 n. 1. But see Grubbs v. Houston First Am. Sav. Ass’n, 718 F.2d 699 (5th Cir.1984) (Congress did not intend to have laws of different states govern effects of curability of default under § 1322). In any event, the Debtors have not elected to cure. In the absence of such an election, the Mortgage remains merged into the Judgment.
b. Equitable Application
FNMA also contends that merger as an equitable doctrine is intended to prevent the repeated litigation of the same claim, thereby unfairly subjecting the mortgagor to repeated exposure on the same cause of action or claim. Because the issue of FNMA’s recovery of the Post-Judgment Expenses was not litigated in the adversary proceeding that culminated with the Judgment, FNMA says, the doctrine of merger should not preclude litigation of this issue now.
FNMA’s argument at first seems to gain some support in one of the standard treatises on the law of contracts:
The extinction of contract rights by judgment is based not simply on the principles applicable to merger generally, namely, that a larger and more important obligation or estate, which fully expresses or includes a lower form of obligation or estate as it renders the latter unnecessary, extinguishes it, but on the broader principle, necessary to prevent vexation of litigants and courts with repeated trials of the same dispute, that matters which have once passed into judgment are, as between parties to the litigation or their successors, conclusively settled by the decision of the court.
15 S. Williston, A Treatise on the Law of Contracts § 1875 (3d ed. 1972) (footnote omitted).
Williston’s elaboration on the interplay between merger and res judicata, however, illustrates the preemptive effect of the entry of a judgment on claims based upon the underlying instrument:
The doctrines of res judicata include more than can be properly brought under the heading of merger, since they debar parties from calling in question in any litigation any matter actually decided in the earlier litigation.
But all the essential consequences of the merger of the plaintiff’s right in a judgment are also necessary consequences of an application of the principles of res judicata.
Thus, a judgment in an action on part of a continuing contract not only merges that right of action but may have the effect of conclusively fixing an interpretation or construction of the contract for all future disputes.
The chief respect in which res judicata goes further than merger is that, instead of substituting a new and higher form of obligation, the judgment may simply discharge a pre-existing duty, which might have been but was not litigated.
Id. (footnote omitted).
In the present case, we believe the Judgment constitutes the “new and higher obligation,” see id., defining the rights of FNMA against the Debtors. Absent any provision in the Judgment for FNMA’s recovery of the Post-Judgment Expenses, the Debtors have no obligation to reimburse FNMA for such expenditures.
c. Merger of Estates
FNMA also argues that an exception to the merger doctrine exists when a creditor retains rights or privileges under the original contract that would be destroyed if the doctrine of merger were applied. It says this would happen if its lien on the Mortgage is merged into its Judgment in foreclosure. This argument confuses merger *1099 of estates with merger of the obligations of a contract into a judgment. It is the latter that is at issue here.
The doctrine of merger of estates applies when a mortgagee becomes the owner of the underlying fee. It provides for the elimination of the mortgage and its merger into the fee unless either the mortgagee shows it did not intend merger to occur or merger would be disadvantageous to the mortgagee. See James B. Sheehan Bldg. & Loan Ass’n v. Scanlon, 310 Pa. 6, 164 A. 722, 723 (1933) (“The principle of law which provides that where the holder of a mortgage purchases the fee such purchase operates as a payment of the mortgage debt would seem to apply only where it is the intention of the parties that the purchase should so operate.”); see also 2 Ladner on Conveyancing, supra § 12.27(f), at 81 (merger occurs when title to mortgaged property and mortgage itself become vested in same holder, unless there is intention to keep mortgage alive; merger never presumed when mortgagee’s interest served by keeping mortgage alive).
The doctrine that obligations of contract merge into a judgment, in contrast, provides:
When the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiffs original claim is said to be “merged” in the judgment.
Restatement (Second) of Judgments § 18 cmt. a (1982). Here, FNMA’s rights to collect post-judgment taxes and insurance premiums never vested in FNMA because they merged into the Judgment in foreclosure. FNMA does not have both title to the mortgaged property and the mortgage itself. Accordingly, the doctrine of merger of estates is inapplicable.
B. The Restitution Issue
1. Subrogation
FNMA has additional arguments. It claims that if it had not paid the taxes due, the taxing authorities would have obtained a lien on the Property senior to FNMA’s interest. A mortgagee who is “compelled” to pay the taxes on mortgaged property may be subrogated to the rights of the taxing authority, “which, of course, includes the right to proceed against the record title holder” for reimbursement of the taxes paid. Pennsylvania Co. for Insurances on Lives v. Bergson, 307 Pa. 44, 159 A. 32,, 33, 35 (1932) (where mortgagee/purchaser at sheriff’s sale was compelled to pay back taxes on mortgaged property in order to clear title, mortgagee was permitted to recover amount paid from the record owner). It is undisputed that FNMA paid the 1987, 1988, 1989 and 1990 real estate taxes assessed against the property. However, it does not appear that any issue of equitable subrogation was raised by FNMA in the bankruptcy or trial courts, thereby failing to preserve the issue for appeal. Moreover, even had that issue been preserved, it does not appear that FNMA was “compelled,” within the meaning of Pennsylvania case law, to pay the taxes, and even had FNMA been entitled to reimbursement, we have been directed to no authority under which a mere right of action for such reimbursement would result in a secured interest inuring to the benefit of FNMA. Therefore, FNMA cannot rely on principles of subrogation to recover its expenditures.
2.. Unjust Enrichment
FNMA finally argues that it is entitled to recover the Post-Judgment Expenses from the Debtors on a theory of unjust enrichment. In order to succeed on this claim, FNMA must show, inter alia, enrichment to the Debtors and an injustice to it if recovery for that enrichment is denied. Visor Builders, Inc. v. Devon E. Tranter, Inc., 470 F.Supp. 911, 924 (M.D.Pa.1978) (citing Meehan v. Cheltenham Township, 410 Pa. 446, 189 A.2d 593 (1963)); see Wolf v. Wolf, 356 Pa.Super. 365, 514 A.2d 901, 905-06 (1986) (elements of unjust enrichment are benefits conferred on, and accepted by, defendant that it would be inequitable for defendant to retain the benefit without payment for their value); see also Sachs v. Continental Oil Co., 454 F.Supp. 614, 619 (E.D.Pa.1978) (person who has been unjustly enriched at expense of another is required to make restitution) (citing Binns v. First Nat’l Bank, 367 Pa. 359, 80 A.2d 768, 776 (1951)). FNMA has made neither of these showings.
With regard to benefit to the Debtors, FNMA argues, “It cannot be seriously *1100 contended that Debtors received no benefit when FNMA paid real estate taxes and insurance premiums for the benefit of Debtors’ Property and for which Debtors otherwise would have been liable.” Brief for Appellant at 41. The bankruptcy court agreed, noting that in addition to the elimination of liability for such payments, the Debtors received the benefits of being mortgagors on a FHA-insured mortgage, including the right to request an assignment of their mortgage to the United States Department of Housing and Urban Development (“HUD”) if they fall in arrears. Stendardo I, 117 B.R. at 839, 841.
These observations ignore a critical point: At the time the Judgment was entered, the Debtors were no longer mortgagors. Their obligations on the Mortgage had merged into the Judgment in foreclosure. Clearly they would have received an enormous benefit if FNMA had not foreclosed and the Mortgage were still in effect because, at that time, they would have still had a legal obligation to pay the Expenses. Any benefit they received from FNMA’s payment of the Post-Judgment Expenses after FNMA had foreclosed on the Mortgage, however, was purely incidental. Thus, the district court correctly determined that “there is no showing in the record that the Debtors benefitted from the post-judgment payment of the taxes and insurance premiums at issue.” Stendardo II, 139 B.R. at 132.
The bankruptcy court determined that the Debtors had a legal obligation to pay the Post-Judgment Expenses independent of the Mortgage. Stendardo I, 117 B.R. at 840-41 (citing Rowe, 110 B.R. at 712; Fox, 83 B.R. at 285; Capodanno, 83 B.R. at 285). These cases on which it relied to reach this conclusion are, however, distinguishable. For example, in Rowe the debt- or/vendee entered into two homemade “Agreements of Sale,” five days apart, to purchase certain premises from the legal owner of record. Rowe, 110 B.R. at 715. Under those agreements, the debtor had agreed to purchase the premises for $7,000.00, payable on terms of $125.00 at signing and $125.00 monthly thereafter. Id. The first agreement required the debt- or to pay “all repairs & payments of utilities,” while the second agreement, dated four days after the first, required the debt- or to pay “all cost of maintenance & repairs.” Id.
Initially, the debtor never paid any water and sewer charges, insurance premiums, or taxes due during the time she had possession of the premises. Id. at 715. Instead, the vendor paid all of these charges until 1982, at which time the debtor began paying the water and sewer charges. Finally, in 1989, the debtor agreed to begin paying the insurance. Id.
In the meantime the debtor had filed for Chapter 13 bankruptcy on November 8, 1988. Id. at 714. In the bankruptcy, the vendor filed a proof of secured claim that included stipulated amounts of $2,998.63 due for taxes on the premises and $528.37 due for water and sewer bills. Id. at 715, 725.
The bankruptcy court first determined that the two agreements for sale of the premises fell within the Pennsylvania Installment Land Contract Law, Pa.Stat. Ann. tit. 68, §§ 901-911 (1965) (the “ILCL”). Id. at 713. Under Pennsylvania law, execution of such an agreement vests the vendee with equitable title to the realty purchased immediately upon the agreement’s execution and prior to settlement. Rowe, 110 B.R. at 725 (citing McCannon v. Marston, 679 F.2d 13, 15 (3d Cir.1982); Vogel v. Northern Assurance Co., 219 F.2d 409, 411 (3d Cir.1955); Allardice v. McCain, 375 Pa. 528, 101 A.2d 385, 389 (1953); Anderson Contracting Co. v. Daugherty, 274 Pa.Super. 13, 417 A.2d 1227, 1230-31 (1979); Long John Silver’s, Inc. v. Fiore, 255 Pa.Super. 183, 386 A.2d 569, 572 (1978)). Pennsylvania law also provides as between the parties to a contract for the sale of land, that the party in possession or entitled to possession when a tax accrues or becomes a lien after the contract is made, but before conveyance of title, must pay those taxes in the absence of a specific statute or agreement to the contrary. Id. (citing In re Appeal of Bd. of Sch. Directors of Owen J. Roberts Sch. *1101 Dist., 500 Pa. 465, 457 A.2d 1264, 1267-68 (1983); Appeals of Baltimore & O.R.R., 405 Pa. 349, 175 A.2d 841, 843-44 (1961); 77 Am.Jur.2d 489 (1975)).
Applying these principles of Pennsylvania law concerning contracts for the sale of real estate, the bankruptcy court in Rowe held that the vendor was entitled to reimbursement from the debtor for the total amount of the real estate taxes. Id. at 726. The bankruptcy court also held the debtor liable for the water and sewer charges because “the equitable ownership interest of a vendee in an installment land sale contract which [i]s silent on the subject render[s] the vendee liable for payment of a municipal sewer lien.” Id. at 726 (citing Byrne v. Kanig, 231 Pa.Super. 531, 332 A.2d 472, 473-75 (1974)).
None of the three principles of Pennsylvania law on which the court relied in Rowe apply to the present case. Each principle is peculiar to an installment land sale contract in which the parties have not indicated a contrary intent. See id. at 713 (noting that case involved “two sympathetic parties to a homemade agreement requiring legal interpretation to fill its interstices”). Here, in contrast, although the Mortgage specifically provided for the Debtors to pay the expenses at issue, it did not indicate the parties’ intent to continue this obligation beyond the date of the entry of the Judgment in foreclosure. The Debtors’ obligation to pay these expenses terminated upon entry of the Judgment, and, accordingly, so did any benefit they would have received from FNMA’s payment of the Post-Judgment Expenses.
Even if the Debtors had received benefit from FNMA’s payment of the Post-Judgment Expenses, FNMA cannot rely on unjust enrichment for reimbursement because its payment of the Post-Judgment Expenses protected its own interest in the Property. Indeed, we observe that had the foreclosed property been subjected to a hazard loss, for which FNMA had paid $2,323.00 in premiums, the proceeds of that loss would have inured to FNMA and not to the Stendardos. See, e.g., Babich v. Karsnak, 364 Pa.Super. 558, 528 A.2d 649, 652 (1987) (finding no unjust enrichment where plaintiff contributed money and services in order to advance his own interest). Any benefit to the Debtors was thus incidental to FNMA’s preservation of its own interest in the Property. Therefore, no injustice will occur from denying FNMA’s recovery of the Post-Judgment Expenses.[6]
III. Conclusion
The Mortgage merged with the foreclosure Judgment FNMA entered on it on February 11, 1987. No language in either the Mortgage or the Note reflects the parties’ intent that the Debtors’ obligation to pay the relevant insurance premiums and taxes survives the merger. The doctrine of merger of estates is not applicable. Finally, FNMA is not entitled to reimbursement for payment of the Post-Judgment Ex *1102 penses under a theory of either unjust enrichment or subrogation. Accordingly, the judgment of the district court that FNMA is not entitled to include the Post-Judgment Expenses in its proof of claim will be affirmed.

. They did not, however, file their Chapter 13 plan until September 26, 1989. See Bankruptcy Rules 1007(c), 3015(b), 11 U.S.C.A. (West Supp.1992) (Chapter 13 debtor must file statement, plan, and summary sheet within fifteen days after bankruptcy filing); accord Local Bankruptcy Rule 1007.2.

. The parties stipulated to $5,803.08 as a starting point for calculation of FNMA’s secured claim.

. The bankruptcy court for the Eastern District of Pennsylvania recently declined to follow the district court in Stendardo II on the issue of allowing the creditor recovery of post-judgment expenses:
[W]e have carefully reviewed Stendardo II and simply cannot bring ourselves to follow it. The Stendardo II court appears to hold that a mortgagee is unable to collect any post-judgment costs because of the doctrine of merger of the mortgage into the judgment. 139 B.R. at 130-31. Nevertheless, recognizing that this holding places the mortgagee in the impossible position of either jeopardizing its investment by allowing a foreclosed premises to go uninsured and/or become delinquent in taxes, or of making a gift of such payments to the mortgagor, the court allows that the mortgagee could have protected itself by “language in the mortgage which clearly indicates that the obligation of the Debtors to make monthly payments for these items continues even after FNMA obtains a judgment in a foreclosure action.” Id. However, if the mortgage is merged within the judgment, it appears anomalous to condition the mortgagee’s right to recovery on the very terms of that mortgage. The holding of [Presque Isle ], cited by Sten-dardo II as support of its conclusion on this point, does not, in our view, support this result. Rather, we believe that our decision in [Stendardo /] accurately holds that merger does not affect any terms of the mortgage except its payment terms (which is not inconsistent with Presque Isle).
In re Johnson, 140 B.R. 850, 855-56 (Bankr.E.D.Pa.1992).

. The third issue is whether FNMA would be entitled to reimbursement of all of the Post-Judgment Expenses under section 506(b) of the Bankruptcy Code, 11 U.S.C.A. § 506(b) (West 1993), notwithstanding that a portion of those expenses accrued and were paid after the Debtors filed their Second Bankruptcy petition. Because this Court decides that FNMA is not entitled to reimbursement for any of the Post-Judgment Expenses, we do not reach this issue.

. FNMA’s other arguments addressing why the Mortgage does not merge with the Judgment are briefly discussed infra.

. The parties also dispute whether the recipient of a benefit must be placed upon notice that the party performing the services expected to be paid if the payor is to recover under the doctrine of unjust enrichment. The district court held that notice was an integral element of unjust enrichment. Stendardo II, 139 B.R. at 132 (citing Fontaine v. Home Box Office, Inc., 654 F.Supp. 298, 303 (C.D.Cal.1986); Sachs v. Continental Oil Co., 454 F.Supp. 614, 619-20 (E.D.Pa.1978)); compare Sachs, 454 F.Supp. at 619 (“An additional element of recovery under quasi contract is the requirement that services be performed under circumstances which put the recipient of the benefit upon notice that the party performing the services expected to be paid.”) (citing Colish v. Goldstein, 196 Pa.Super. 188, 173 A.2d 749 (1961)) with Crossgates Realty, Inc. v. Moore, 279 Pa.Super. 247, 420 A.2d 1125, 1128 (1980) (“It is clear that a showing of knowledge or wrongful intent on the part of the benefitted party is not necessary in order to show unjust enrichment.”) and Martin v. Little, Brown and Co., 304 Pa.Super. 424, 450 A.2d 984, 988 (1981) ("‘Quasi-contracts may be found in the absence of any expression of assent by the party to be charged and may indeed be found in spite of the party's contrary intention.’ ”) (quoting Schott v. Westinghouse Elec. Corp., 436 Pa. 279, 259 A.2d 443, 449 (1969)). Because the Debtors had no such notice, the district court refused to allow FNMA reimbursement under a theory of unjust enrichment. Stendardo II, 139 B.R. at 132. Because this Court has decided that neither of two undisputedly essential elements of unjust enrichment are present here, we do not reach the question of whether notice is required.