J-S47025-14

2015 PA Super 79

| | | |
|---|---|---|
| EMC MORTGAGE, LLC, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT D. BIDDLE, | : | |
| | : | |
| Appellant | : | No. 2894 EDA 2013 |

Appeal from the Order Entered August 26, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): September Term, 2011, No. 03840

BEFORE:  MUNDY, OLSON AND WECHT, JJ.

OPINION BY OLSON, J.:                       **FILED APRIL 15, 2015**

Appellant, Robert D. Biddle, appeals from the order entered on August 26, 2013, granting a motion to reassess damages filed by Appellee, EMC Mortgage, LLC ("EMC").  Upon careful consideration, we vacate the order and remand with instructions.

The trial court summarized the facts and procedural history of this case as follows:

> The instant matter was initiated by [EMC] on September 30, 2011, when it filed a mortgage foreclosure complaint against Appellant.  [Appellant failed to file a pleading in response to EMC's mortgage foreclosure complaint.]  After more than a year of conciliation efforts, [EMC] entered a default judgment *via* praecipe on February 19, 2013 [in the amount of $60,264.10].
>
> [EMC] filed a motion to reassess damages on June 6, 2013, stating that additional costs and interest had accrued since the entry of judgment, and asking [the trial court] to modify the damages accordingly.  Appellant filed an answer

on June 26, 2013, arguing that the mortgage foreclosure judgment was final when entered, and thus, damages were fixed at that point in time. Upon consideration of [EMC's] motion and [] Appellant's response thereto, the [trial court] granted the motion to reassess damages through an order dated August 6, 2013, and docketed on August 7, 2013, thereby allowing the amendment of [EMC's] writ of execution to reflect an updated, total damages amount of $78,115.15 [including interest at six percent annum].

Trial Court Opinion, 11/5/2013, at 1-2 (record citations, superfluous capitalization, and parenthetical omitted). This timely appeal resulted.[1]

Appellant presents the following issues for our review:

A. Did the lower court abuse its discretion in amending the default judgment; in the absence of any claim that the allegations in the complaint were erroneous or that the judgment was entered by mistake at the time it was taken or that any miscarriage of justice would occur if the judgment was not amended; when there was no admissible evidence in the record that supported the

---

[1] The reassessed judgment was granted by order dated August 6, 2013 and docketed on August 7, 2013. The order states that EMC's motion to reassess damages is granted "and that the writ is amended to reflect a total judgment amount, including principal balance, interest through July 1, 2013, late charges, legal fees, cost of suit and title, property inspections, mortgage insurance premium, and escrow deficit of $78,115.71, plus interest at six percent annum." Trial Court Order, 8/7/2013, at 1. According to the docket, notice of the judgment was sent to all of the parties by the Prothonotary, pursuant to Pa.R.C.P. 236, on August 26, 2013. Appellant filed a notice of appeal on September 25, 2013, or within 30 days after notice of the judgment was sent by the Prothonotary. Thus, the appeal was timely. *See Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. 2004) (citation omitted) ("Notice of appeal, filed within thirty days after the entry of the judgment and the Rule 236(b) notice, was timely."). On September 27, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on October 17, 2013. On November 5, 2013, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

higher judgment amount; and when amending the judgment simply enabled EMC to circumvent the requirement in Pa.R.C.P. 1037(b)(1) that damages on a default judgment, which cannot be calculated from the allegations in the complaint, be established by a trial limited to damages[?]

B. Did the lower court err as a matter of law when it failed to hold a hearing or use other means to develop a record to resolve disputed factual issues and when it preferred EMC's unverified version of the facts over [Appellant's] answer to the motion with no evidentiary basis for doing so[?]

C. Did the lower court err as a matter of law by increasing the amount of the original judgment to include interest allegedly accrued after the date the complaint was filed, and before the original judgment was entered, in the absence of a [n]ote or anything else in the record entitling EMC to any interest or setting forth an interest rate[?] Did the court further err by adding other items of damages, allegedly incurred after the complaint was filed, in the absence of any admissible evidence of their existence[?]

D. Did the lower court err as a matter of law by calculating the amounts that allegedly came due after the date the default judgment was originally entered as if the judgment had never been entered, failing to discriminate between pre and post judgment amounts, and by allowing EMC to include items post judgment to which it was not entitled as a matter of applicable substantive law[?]

Appellant's Brief at 10-12 (suggested answers omitted).

Initially, we must determine whether this Court has jurisdiction to consider the merits of Appellant's appeal. "We address this issue first because the appealability of an order directly implicates the jurisdiction of the court asked to review the order." **Mother's Rest. Inc. v.**

*Krystkiewicz*, 861 A.2d 327, 331 (Pa. Super. 2004) (citation omitted). The trial court recommends quashing this appeal on grounds that the order granting the motion to reassess damages was interlocutory, and not subject to an exception[2] or to an appeal as of right.[3] Trial Court Opinion, 11/5/2013, at 2-4. More specifically, the trial court determined that the order reassessing damages "was not final in nature, as it was issued prior to satisfaction of the judgment." *Id.* at 3. The trial court maintained that the order is not collateral, necessitating immediate appellate review, because Appellant may continue to contest the amount of damages until satisfaction or "can still stay any future sheriff's sale of the property and, if that fails, may seek to set aside said sale." *Id.*

Moreover, in January 2014, after the appeal was taken, this Court entered a *per curiam* order directing Appellant to respond to a rule to show cause why the appeal should not be quashed for lack of jurisdiction for failing to file a petition to strike or open the default judgment. On February 10, 2014, Appellant filed a statement in response to our Court's order, arguing that he was "not appealing from the entry of a default judgment against him, but is appealing the separate and subsequent order amending

---

[2] *See* Pa.R.A.P. 312 (interlocutory appeal by permission); Pa.R.A.P. 313 (collateral orders).

[3] *See* Pa.R.A.P. 311 (interlocutory appeal by right).

the judgment to increase the damages." Appellant's Statement in Response to Superior Court Directive, 2/10/2014, at *4.

Upon review of the applicable law and the procedural posture of this case, we conclude that the order at issue is a final, appealable order and Appellant was not required to file a petition to strike or open the reassessed judgment. "In this Commonwealth, an appeal may only be taken from: 1) a final order or one certified by the trial court as final; 2) an interlocutory order as of right; 3) an interlocutory order by permission; or 4) a collateral order." **Mother's**, 861 A.2d at 331 (citation omitted). "To constitute a final order, the order appealed from must have disposed of all claims and of all parties, have been defined as final by statute, or have been certified as final by the trial court." **Id.**, *citing* Pa.R.A.P. 341(b).

Default judgments generally are governed by the Pennsylvania Rules of Civil Procedure and are entered by prothonotaries and without judicial involvement. **Gotwalt v. Dellinger**, 577 A.2d 623, 625 (Pa. Super. 1990). Such judgments are not judicial orders and are not subject to an immediate appeal after their entry; rather, to obtain relief, the party against whom the judgment was entered may either file a petition to strike the default judgment or file a petition to open the default judgment. **Mother's**, 861 A.2d at 336. Once a court of common pleas rules on one of these petitions, then the aggrieved party has a right to an appeal to a higher court pursuant to Pennsylvania Rule of Appellate Procedure 311(a)(1). **See** Pa.R.A.P.

311(a)(1) (granting an appeal as of right from any "order refusing to open, vacate or strike off a judgment").

Here, however, the situation is markedly different from the conventional case. EMC initially obtained a default judgment on February 19, 2013. Thereafter, EMC, the party in whose favor judgment was originally entered, moved on June 6, 2013 to reassess its favorable judgment by adding additional amounts to reflect sums allegedly expended in obtaining the judgment or subsequent thereto. Appellant, on June 26, 2013, filed his response to EMC's motion. In August 2013, the trial court entered an order directing the Prothonotary to amend the judgment to reflect additional principle, fees, and interest as requested by EMC. Appellant's June 26, 2013 response did not contest the underlying default judgment, but simply challenged the supplemental amended amounts requested by EMC that were ultimately reduced to judgment at the trial court's direction. In this particular case, judgment was not entered ministerially by the Prothonotary but, instead, the trial court ordered that an amended judgment be entered. In such an instance, Appellant was not required to file a petition to strike or open the judgment. Moreover, the trial court granted the only relief requested by EMC and directed the entry of judgment over Appellant's objection. Thus, all of the claims of all of the parties have been finally addressed by the trial court. *See Morgan Guar. Trust Co. of New York v. Mowl*, 705 A.2d 923, 928 (Pa. Super. 1998) ("The order was a final, appealable order since it denied appellant the only

relief it then was seeking in a mortgage foreclosure action."). Accordingly, the trial court's order constituted a final order and we have jurisdiction to entertain Appellant's appeal.

In his first issue presented, Appellant claims that the trial court erred by ordering an upward amendment of the amount of the default judgment based upon EMC's unverified, reassessment motion. Appellant's Brief at 23-26. Relying upon Pa.R.C.P. 1037,[4] Appellant contends that the trial court approved "an amendment of a default judgment that enabled [EMC] to avoid its obligation to prove its damages at trial." *Id.* at 26. According to Appellant, EMC's complaint in mortgage foreclosure stated it "was owed $60,264.10[,]" but the "complaint was devoid of any exhibit evidencing that

_____

[4] Rule 1037 of the Pennsylvania Rules of Civil Procedure provides in pertinent part:

> **Rule 1037. Judgment Upon Default or Admission. Assessment of Damages.**
>
> \* \* \* \* \* \* \*
>
> (b) The prothonotary, on praecipe of the plaintiff, shall enter judgment against the defendant for failure to file within the required time, a pleading to a complaint . . . for any relief admitted to be due by the defendant's pleadings.
>
> (1) The Prothonotary shall assess damages for the amount to which the plaintiff is entitled if it is a sum certain or which can be made certain by computation, but if it is not, the damages shall be assessed at a trial at which the issues shall be limited to the amount of the damages.

- 7 -

EMC is entitled to ongoing interest in any amount[,]" "[t]he mortgage contains no interest rate[,]" [and,] "[t]here is no note attached as an exhibit to the complaint." *Id.* at 27-28. Hence, Appellant argues, "the trial court expressly based its decision to amend the default judgment on documents that do not exist in the record." *Id.* at 33. In sum, Appellant asserts, "it was an abuse of discretion for the trial court to permit EMC to take a default judgment on the complaint and, four months later, allow it to amend the default judgment, without evidence, and to thereby circumvent the requirement that EMC prove at trial its damages in excess of the amount alleged in the complaint." *Id.* at 32. As such, Appellant claims that EMC was required to prove damages at a trial and that the trial court erred to the extent it permitted EMC to augment its default judgment by way of an unsupported motion to add interest, fees, and costs. *Id.* at 28-33.

In his second issue presented, Appellant argues that EMC's motion to amend the default judgment was not verified and, while the mortgage was attached to the motion as an exhibit and it refers to a note, the note was not presented. *Id.* at 34. Thus, Appellant contends that EMC has "submitted nothing [saying] that it had [a] right to interest in any amount and nothing setting forth a rate of interest." *Id.* at 34-35. Further, Appellant claims he "filed a response to the motion in which he expressly and specifically denied all the factual allegations in [EMC's] motion[,]" including denials "that the interest calculation was correct; [] that the legal fees were actually incurred or reasonable; [] that there were any property inspections of his house; and

[] that there was an escrow deficit in the amount set forth." *Id.* at 35, 39-40 (footnotes omitted). Relying upon Pa.R.C.P. 208.1-208.4, as well as local rule Phila.C.R.P. 208.3(b), Appellant contends the trial court failed to follow the proper procedure for developing a record on disputed facts. *Id.* at 38.

In his third issue presented, Appellant argues "the court below relied upon two lines of cases." *Id.* at 44. Appellant claims that the first line of authority, as established in ***B.C.Y., Inc., Equip. Leasing Associates v. Bukovich***, 390 A.2d 276, 278 (Pa. Super. 1978), "recognized the authority of the court to correct errors and to conform the facts of the default judgment to the facts that existed at the time the judgment was entered and the damages originally assessed." Appellant's Brief at 44-45. Appellant argues that "[t]he other line of cases suggested in *dicta* that the assessment on the writ of execution could be amended to reflect post judgment interest and other post judgment amounts the plaintiff had a right to collect as additions to the judgment." *Id.* at 45, *citing **Nationsbanc Mortgage Corp. v. Grillo***, 827 A.2d 489, 493 (Pa. Super. 2003). Thus, Appellant claims:

> EMC, without expressly articulating [these two lines of authority], asked the court for both kinds of relief. It alleged in its motion that when it filed its assessment of damages and originally took the judgment on February 19, 2012, it had assessed the damages only for the amount demanded in the complaint and it further alleged that the amount alleged in the complaint did not reflect what it was due when the judgment was entered [more than one year after the complaint was filed].
>
> In addition[,] EMC alleged in its motion that it was entitled to increase the judgment because it incurred

attorney[s'] fees and court costs and other costs and additional interest *after* the judgment was entered.

The order entered by the court below does not identify the kind of relief the court provided EMC. That is, the order does not indicate the extent to which the original assessment is being amended because the original amount was entered in error. Nor does the order indicate the extent to which the assessment on the writ of execution was being amended to add [] post[-]judgment interest[,] costs[,] or other amounts, accruing after the February 19, 2013 original assessment date, that EMC had a right to add to its judgment.

\*          \*          \*

Pre-judgment, the mortgage controls the rights and obligations of the parties. Post[-]judgment, they are controlled by the judgment, by those mortgage provisions that expressly survive the judgment and by those applicable rules of court and statutes that provide for amounts which can be added to the judgment prior to execution.

Here, the trial court's failure to distinguish between pre-judgment and post[-] judgment events caused it to err as a matter of law in its determination of what EMC was entitled to include in the judgment at the time it originally took a default and filed its praecipe for default judgment.

*Id.* at 45-49 (citations omitted; emphasis in original).

Finally, in his last issue presented, Appellant argues that once the default judgment was entered, the underlying mortgage was extinguished and merged with the judgment. *Id.* at 57. He contends that "[a]fter filing its praecipe for a default judgment, EMC is entitled to receive for the sale of [Appellant's] property, only the judgment, less payments made on account of the judgment at the legal rate or at some other amount if provided in the judgment, less payments made on account of the judgment, plus record

costs which may be added in accordance with the applicable procedural rules." *Id.* at 58. Citing paragraph 23 of the mortgage, Appellant concedes that "[t]he only provision of the mortgage that expressly survives the entry of judgment is the interest rate". *Id.* at 59. Appellant again argues that the rate of interest included in the note was not provided to the court. *Id.* at 59, n.20. Appellant therefore argues that the trial court erred by failing to parse pre- and post-judgment interest and costs because:

> The interest rate that is included in the judgment, to the extent there is any evidence of an interest rate, is on the unpaid principal balance of the mortgage from the date of acceleration to the date of the judgment. In contrast, interest post[-]judgment allowed by 42 Pa.C.S.A. § 8101 is on the entire judgment amount.

*Id.* at 60.

Our standard of review is as follows. "A judgment should only be stricken if the record reveals a defect on its face." *Bukovich*, 390 A.2d at 278. Here, as in *Bukovich*, we have a validly entered default judgment with only an alleged error on the amount entered. *Id.* "The fact that the judgment was entered is not the mistake and thus the entire judgment should not be stricken." *Id.* The trial court has the power to modify a judgment upon the proper application to the court for amendment. *Id.* (citation omitted); *see also Grillo*, 827 A.2d at 493 (mortgagee "had every right to petition the court to amend the writ of execution to include additional interests and costs prior to" satisfaction.); *PNC Bank, N.A., v. Unknown Heirs*, 929 A.2d 219, 227 n.3 (Pa. Super. 2007) (a motion to

- 11 -

reassess damages "invokes a trial court's equitable power to enforce the underlying judgment and to grant relief until the judgment is discharged or satisfied."). We review the trial court's entry of a modified judgment for an abuse of discretion. **Bukovich**, 390 A.2d at 278.

Based upon the foregoing legal principles, we conclude that the trial court enjoys the inherent power to amend a judgment until the judgment is discharged or satisfied.[5] In this case, EMC sought amendment prior to either event. Thus, we discern no abuse of discretion or error of law in the trial court's decision to entertain EMC's request to reassess the default judgment.

However, we must still assess: (1) whether the mortgage was extinguished, either in whole or in part, upon entry of judgment, and; (2) whether the trial court utilized the proper procedure for recalculating EMC's damages.

As discussed below, upon entry of a default judgment the parties' mortgage agreement was extinguished. Both parties and the trial court rely upon the Third Circuit case,[6] **In re Stendardo**, 991 F.2d 1089 (3d Cir.

---

[5] Relying on a waiver provision in the parties' mortgage agreement as well as **In re Phillips Group, Inc.**, 382 B.R. 876 (Bankr. W. D. Pa. 2008), EMC also argues that it could seek to amend the default judgment since Appellant waived the defects in the proceedings. Since we have determined that the trial court enjoyed the inherent power to amend a judgment, we need not examine the waiver provision at issue.

[6] We are not bound by decisions of the federal courts, but we may rely on them for persuasive authority. **McEwing v. Lititz Mut. Ins. Co.**, 77 A.3d 639, 648 n.7 (Pa. Super. 2013).

1993), in advancing their respective positions regarding the merger of the mortgage with the default judgment. Thus, we will examine ***Stendardo*** herein. The Stendardos owned residential property in Philadelphia, secured by a mortgage that was subsequently assigned to Federal National Mortgage Association (FNMA). The Stendardos later filed for bankruptcy and the bankruptcy court determined that FNMA was entitled to collect real estate taxes and insurance premiums it paid after filing a mortgage foreclosure action and obtaining a default judgment against the Stendardos' property.

The Stendardos appealed to the district court, which reversed, reasoning that the Stendardos' obligations under the mortgage were merged into the judgment obtained in the foreclosure action:

> [T]he bankruptcy court held that FNMA was entitled to include the Post-Judgment Expenses in its proof of claim. The court first held that although a mortgage merges into a judgment, the lien created by the mortgage remains despite the presence of the judgment. Accordingly, the bankruptcy court concluded that the doctrine of merger did not render null and void the mortgage terms imposing on the [Stendardos] the obligation to pay insurance premiums and real estate taxes. As a result, FNMA was allowed to add the Post-Judgment Expenses to the amount of its secured claim. In the alternative, the bankruptcy court held that even if such a merger occurred, FNMA could include the Post-Judgment Expenses in its secured claim under a theory of unjust enrichment because FNMA's payments clearly conferred benefits upon the [Stendardos] who retained an independent legal obligation to pay these costs.
>
> The district court vacated and remanded. In order for mortgage terms to survive merger into a foreclosure judgment, it decided that the language of the mortgage must clearly indicate that a term or clause in an agreement will remain operative after a judgment is obtained. The

- 13 -

language in the Mortgage here only mentions the [Stendardos'] obligation to pay the relevant taxes and insurance premiums while the Mortgage is in effect. It does not provide that this obligation is to continue after a judgment is obtained. Based on this reasoning, the district court concluded that the Mortgage is unambiguous as a matter of law and not reasonably susceptible to the bankruptcy court's interpretation that the [Stendardos'] obligation to pay the expenses at issue extends beyond the date of judgment.

*          *          *

The district court also held that FNMA could not rely on the doctrine of unjust enrichment to recover the Post-Judgment Expenses because no evidence in the record established either that the [Stendardos] benefitted from FNMA's payments or that the [Stendardos] had notice that FNMA was making the payments and that it expected to be reimbursed. Accordingly, the district court refused to allow FNMA to include in its secured proof of claim the Post-Judgment Expenses.

*In re Stendardo*, 991 F.2d at 1093-94 (citations, quotations and footnotes omitted).

In analyzing merger of a mortgage with a default judgment, the Third Circuit noted:

Under controlling Pennsylvania law, "[i]t is elementary that judgment settles everything involved in the right to recover, not only all matters that were raised, but those which might have been raised. The cause of action is merged in the judgment which then evidences a new obligation." *Lance v. Mann*, 60 A.2d 35, 36 (Pa. 1948) (citations omitted). The doctrine of merger of judgments thus provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties. *In re Presque Isle Apartments*, 112 B.R. 744, 747 (Bankr.W.D.Pa. 1990); *see In re Herbert*, 86 B.R. 433, 436 (Bankr.E.D.Pa. 1988) ("The Debtor is, in our view,

correct in her assertion that '[t]he mortgage is merged in a judgment entered in a mortgage foreclosure action' in Pennsylvania.") (*quoting* 25 P.L.E. 85 (1960); *citing **Murray v. Weigle**,* 11 A. 781, 782 (Pa. 1888); ***Hartman v. Ogborn**,* 54 Pa. 120, 122-23 (1867)); *see also **In re Roach**,* 824 F.2d 1370, 1377 (3[d] Cir. 1987) ("In New Jersey, as in many states, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished. As a result of this merger, there is no longer a mortgage....")) (citations omitted).

For example, bankruptcy courts have consistently held that the doctrine of merger under Pennsylvania law entitles a mortgagee post-judgment to the legal rate of interest rather than the rate specified in the mortgage. Because the mortgage merges into the judgment, its terms specifying the contractual interest rate no longer exist to bind the parties. ***See, e.g., Presque Isle**,* 112 B.R. at 747; ***In re Rorie**,* 98 B.R. 215, 218-19 (Bankr.E.D.Pa. 1989); ***In re Smith**,* 92 B.R. 127, 129-31 (Bankr.E.D.Pa. 1988), *rev'd on other grounds, **Smith v. Kissell Co.**,* 98 B.R. 708 (E.D.Pa.1989); ***Herbert**,* 86 B.R. at 436.

There is an exception to this doctrine. Parties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment. ***See, e.g., Presque Isle**,* 112 B.R. at 747 ("Once a claim is reduced to judgment, the legal rate of interest applies unless the documents evidence a clear intent to continue the contractual rate of interest post-judgment.") (*citing **In re Crane Automotive, Inc.**,* 98 B.R. 233 (Bankr.W.D.Pa. 1989)); *see also **Burns Mfg. Co. v. Boehm**,* 467 Pa. 307, 356 A.2d 763, 766 n.3 (1976) (parties' intent controlling in construing agreement); *accord **Robert F. Felte, Inc. v. White**,* 302 A.2d 347 (Pa. 1973). The applicability of this exception will determine whether the instant [m]ortgage clause requiring the [Stendardos] to pay the expenses at issue survived the [j]udgment.

***In re Stendardo***, ***supra*** at 1094-1095.

Moreover, the **Stendardo** court examined a prior decision in deciphering whether contractual provisions survive the entry of judgment:

> [In **In re Clark Grind & Polish, Inc.**, 137 B.R. 172 (Bankr.W.D.Pa. 1992),] specific language in the mortgage, also incorporated into the note and the asset purchase agreement, provided for survival of the creditor's recovery of attorneys' fees and costs:
>
> > In case [of] default ... foreclosure proceedings may be brought ... on this Mortgage and prosecuted to judgment, execution and sale for the collection of the same, together with costs of suit and an attorney's commission for collection of the total indebtedness.
>
> [**Clark**] at 174. Accordingly, the court decided in **Clark** that this language demonstrated the parties' intent that the creditor was entitled to compensation for attorneys' fees and costs in executing its judgment:
>
> > Between the time of judgment and the time the secured creditor receives payment, the secured creditor may be required to make additional expenditures to protect its security interest and its collateral. The amount of fees asserted in the judgment is not binding where there is an intent to allow the secured creditor to recoup its costs in fully realizing upon its claim. Such costs include defending the claim in bankruptcy proceedings.
> >
> > The Mortgage and Asset Purchase Agreement contemplate that liability for fees and costs would continue until the debt was paid. [The secured creditor] may include these charges as part of its secured claim subject to this Court's determination of the reasonableness of such charges.
>
> **Id.** at 175.

**Stendardo**, 991 F.2d at 1096.

In this case, initial judgment was entered based upon EMC's complaint in foreclosure, which alleged the following amounts were due, as of June 30, 2011:

| | |
|---|---|
| Principal Balance | $58,227.31 |
| Interest | $1,772.61 |
| 02/01/2011 through 06/30/2011 | |
| Late Charges | $231.92 |
| Property Inspections | $160.00 |
| Subtotal | $60,391.84 |
| Escrow Credit | ($127.74) |
| **TOTAL** | $60,264.10 |

Complaint in Mortgage Foreclosure, 9/30/2011, at ¶ 6.

Relevant to the issue of whether and to what extent EMC's default judgment extinguished the terms of the parties' agreement, the mortgage contained the following provisions:

> 18.  Foreclosure procedure.  If [EMC] requires immediate payment in full under paragraph 9 [pertaining to acceleration of the debt], [EMC] may foreclose this Security Instrument by judicial proceeding.  **[EMC] shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence**.
>
> \*          \*          \*
>
> 23.  Interest Rate After Judgment.  **[Appellant] agrees that the interest rate payable after a judgment is entered on the [n]ote or in an action of mortgage foreclosure shall be the rate payable from time to time under the [n]ote.**

Appellant's Brief, Exhibit D, Mortgage, 12/2/1996, at 7 (emphasis supplied).

In its motion to reassess damages, EMC alleged:

5. Additional sums have been incurred or expended on [Appellant's] behalf since the Complaint was filed and [Appellant] has been given credit for any payments that have been made since the judgment. The amount of damages should read as follows:

| | |
|---|---|
| Principal Balance | $58,227.31 |
| Interest through July 1, 2013 | $10,377.94 |
| Late Charges | $231.92 |
| Legal Fees | $2,300.00 |
| Cost of Suit and Title | $1,408.64 |
| Property Inspections | $525.00 |
| Mortgage Insurance Premium to be paid | $61.05 |
| Escrow Deficit | $4,983.85 |
| **TOTAL** | $78,115.71 |

6. [EMC] paid the following in legal fees during the time the loan was in default:

| | | |
|---|---|---|
| 10/12/2011 | FORECLOSURE FEE | $1,300.00 |
| 2/20/2012 | Conciliation Conference Mandatory Court Appearance | $250.00 |
| 4/20/2012 | Conciliation Conference Mandatory Court Appearance | $250.00 |
| 6/8/2012 | Conciliation Conference Mandatory Court Appearance | $250.00 |
| 8/10/2012 | Conciliation Conference Mandatory Court Appearance | $250.00 |
| | Total Fees | $2,300.00 |

EMC's Motion to Reassess Damages, 6/6/2013, at ¶¶ 5-6.

Here, the trial court determined that the language in the mortgage evinced the parties' intent to allow the mortgage to govern the parties' obligations following the entry of judgment. Trial Court Opinion, 11/5/2013, at 7-8. Relying on paragraph 18 above, the trial court concluded that EMC was able to collect **all** of its submitted expenses incurred in the foreclosure, including "costs, fees, and other expenses stemming from Appellant's default and the resulting foreclosure action." *Id.* at 8. It further found that "[paragraph] 23 of the mortgage [as set forth above] provides that the interest rate after judgment shall be at the rate entered on the note." *Id.* Although we acknowledge the trial court's inherent authority to consider EMC's request to amend its judgment, we do not agree with the trial court's interpretation of the mortgage agreement or its procedure for reassessing EMC's damages.

We begin our analysis by reciting the legal framework pertaining to contractual interpretation:

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 665 (Pa. Super. 2014).

In construing the plain meaning of the mortgage, we note that paragraph 18 clearly and unambiguously states that EMC is "entitled to collect all expenses incurred **in pursuing the remedies** [of a foreclosure action], including, but not limited to, attorneys' fees and costs of title evidence." (emphasis added). We read this provision to mean that recoverable expenses include those that are necessary to the pursuit of the foreclosure action. The types of recoverable expenses that are expressly identified in paragraph 18 support this interpretation, *i.e.* attorneys' fees and costs of title evidence. Thus, it was not error for the trial court to grant attorneys' fees and costs of title as those expenses survived the judgment under the plain terms of the parties' security agreement.[7]

As for other expenses requested by EMC (e.g., late charges, additional property inspections, mortgage insurance premiums, and escrow deficits), however, we must apply a different analysis. Although the mortgage permitted EMC to recover these sums from Appellant or, alternatively, to make these expenditures on his behalf (**see infra** at n.10), the agreement did not expressly provide that collection of these sums or outlays for these

---

[7] Moreover, subject to our more detailed discussion **infra**, the trial court did not err in concluding that the interest rate term stated in the note survived entry of EMC's default judgment.

items survived the default judgment. We note further that EMC never filed an amended complaint claiming these additional damages prior to the entry of default judgment.[8] For these reasons, EMC's pre-judgment losses (other than interest, attorneys' fees, and title costs) are no longer recoverable. Moreover, to the extent EMC sought to add post-judgment expenses (other

_____

[8] As previously stated, default judgments generally are governed by the Pennsylvania Rules of Civil Procedure and are entered by prothonotaries and without judicial involvement. *Gotwalt*, 577 A.2d at 625. "The prothonotary shall assess damages for the amount to which the plaintiff is entitled if it is a sum certain or which can be made certain by computation, but if it is not, the damages shall be assessed at a trial at which the issues shall be limited to the amount of the damages." Pa.R.C.P. 1037. Thus, a default judgment is entered on a sum certain amount. If a plaintiff determines the amount of damages claimed in the original complaint is incorrect, plaintiff may file an amended complaint correcting the sum certain amount of damages claimed prior to the entry of a default judgment. Alternatively, a plaintiff may file an amended complaint seeking a trial on the lone issue of damages if a sum certain amount cannot be ascertained. *See Reichert v. TRW, Inc.*, 611 A.2d 1191, 1193 (Pa. Super. 1992) (filing an amended complaint foreclosed ability for default judgment on the original complaint). Specifically, we note that

> [a] party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. 1033. In this case, EMC never filed an amended complaint. Instead, it chose to enter default judgment for the sum certain amount set forth in its original complaint.

than interest, attorneys' fees, and title costs) to its recovery, then it needed to demonstrate how its pursuit of a foreclosure remedy necessitated those outlays. As discussed below, we conclude that the trial court failed to make these critical inquiries and, as far as legal fees and title costs are concerned, the court further failed to consider whether EMC's requested damages were reasonable.

With regard to attorneys' fees, 41 P.S. § 406 allows a residential mortgage lender such as EMC to charge Appellant with actual and reasonable attorneys' fees. *See* 41 P.S. § 406(2) ("Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor."). And, as we have said above, the mortgage at issue clearly evinces the parties' intention for attorneys' fees to survive the entry of judgment. We note, however, that "[a] determination of [the] reasonableness [of attorneys' fees in a foreclosure action] requires the [c]ourt to engage in a lodestar analysis which takes into consideration the number of hours reasonably expended times a reasonable hourly rate increased or decreased depending upon any additional factors involving case contingency or work product quality." *In re McMillan*, 182 B.R. 11, 14-15 (Bankr. E.D. Pa. 1995). A claimant must "make an evidentiary record regarding the time and rate and actual services rendered in connection with its foreclosure action."

*Id.* Here, EMC submitted flat fees for services provided on certain dates, but there is no breakdown of the time, rate, or actual services provided because there are no invoices, billable hour itemizations, or affidavits from counsel to confirm EMC's allegations. On remand, EMC must come forward with such proof to justify its claim for attorneys' fees.

The trial court also awarded EMC $1,408.64 for costs of suit and title. While paragraph 18 clearly entitles EMC to such costs in pursuing its foreclosure remedy, EMC failed to submit evidence supporting these expenses. Based upon the limited record before us, it is impossible to confirm whether the costs of title evidence alleged in EMC's motion to reassess damages were actually incurred and whether they were reasonable. Again, on remand, EMC must adduce evidence to support its request for costs of title evidence.

The trial court also granted EMC late charges, the costs of additional property inspections, mortgage insurance premiums, and escrow deficits. These expenses seem to have been made in accordance with EMC's rights under the mortgage agreement. In fact, EMC admits as much in its memorandum of law in support of the motion to reassess damages. In its memorandum, EMC argued: "Because of the period of time between the initiation of the mortgage foreclosure action, the entry of judgment and the [s]heriff's [s]ale date, damages as previously assessed are outdated and need to be adjusted to include current interest, real estate taxes, insurance

premiums, costs of collection, and other expenses which [EMC] has been **obligated to pay under the Mortgage in order to protect its interests**." Memorandum of Law in Support of EMC's Motion to Reassess Damages, 6/6/2013, at *2 (emphasis added).[9] Essentially, EMC alleged that these additional expenses arose from its rights and obligations under the mortgage (which was extinguished -- except as expressly provided -- following entry of judgment) to protect its interests in the subject property. We therefore examine EMC's individual requests separately.

With regard to the performance of additional property inspections, the mortgage does not specifically identify this right as surviving the entry of default judgment in foreclosure. Therefore, if EMC sought to amend its judgment by adding pre-judgment expenses incurred in performing property inspections, then it needed to file an amended complaint prior to the entry of judgment to account for those expenditures. It failed to take this action. Thus, pre-judgment expenditures for additional property inspections are no longer recoverable. However, to recover for post-judgment expenditures on property inspections, EMC may demonstrate on remand how the pursuit of its foreclosure remedy necessitated these expenses.[10] To recover these

---

[9] EMC's memorandum in support of its motion to reassess is not paginated. We have supplied page numbers for ease of discussion.

[10] Under the heading of Uniform Covenants, the mortgage obligates Appellant to pay taxes, hazard insurance premiums, mortgage insurance
*(Footnote Continued Next Page)*

sums, EMC will need to offer proof of when it performed the property inspections, what it paid for those services, and what purpose was served by the inspections.

Likewise, late charges are not specifically exempt from the merger of the parties' mortgage into EMC's judgment. Once the trial court entered judgment, the mortgage was extinguished and Appellant ceased owing payments. Because Appellant had no obligation to continue making mortgage payments, there could be no late fees. We simply fail to see how EMC's foreclosure action could have necessitated this particular element of its amended damage claim. Moreover, we note that the late fees as set forth in both EMC's complaint and its motion to reassess damages are for the exact same amount, $231.92. It seems highly suspect that such a distinct amount for late fees accrued both pre- and post-judgment. Had additional late fees accrued after the filing of the complaint, EMC should have instead filed an amended complaint before the entry of judgment to include those damages. Again, it did not do this. Because late charges do

*(Footnote Continued)* ─────────────────

premiums, late charges, and other expenses. **See** Appellant's Brief, Exhibit D, Mortgage, 12/2/1996, at ¶¶ 1 and 2. In the event that Appellant fails to make such payments, or in the event of a legal proceeding that significantly affects EMC's rights in the property, the mortgage further provides that EMC "may do and pay whatever is necessary to protect the value of the [p]roperty and [EMC's] rights in the [p]roperty, including payment of taxes, hazard insurance and other items[.]" **Id.** at ¶ 7. We leave it to the trial court to consider, on remand, whether the tasks performed and the expenses incurred by EMC pursuant to this provision should be deemed necessary because of the commencement of foreclosure proceedings.

not expressly survive the mortgage, it was an abuse of discretion for the trial court to have granted them.

Regarding the escrow deficit, EMC claimed "the mortgage specifically provides that the mortgagee may advance the monies for taxes and insurance and charge these payments against the escrow account." *Id.* at *4. The mortgage, however, makes no mention that taxes and insurance survive judgment. Further, EMC alleged a lump sum for Appellant's "escrow deficit," but failed to itemize the amount. Thus, it is impossible to confirm what items were included in this amount, whether these expenses accrued before or after the entry of judgment, or whether EMC's pursuit of a foreclosure remedy necessitated post-judgment expenditures on these items. To the extent these expenditures were made prior to the entry of judgment, EMC's failure to file an amended complaint for these damages precludes any recovery at this time. On remand, therefore, EMC will need to demonstrate that these expenses accrued after the entry of judgment and that its foreclosure action required post-judgment outlays for these items.[11]

Turning now to EMC's request for post-judgment interest, under paragraph 23 of the mortgage, Appellant agreed "that the interest rate payable after a judgment is entered on the [n]ote or in an action of

_____

[11] In its motion to reassess damages, EMC requested $61.05 for the payment of mortgage insurance premiums. On remand, EMC must make a similar demonstration as described above before obtaining this sum by way of an amended damage award.

mortgage foreclosure shall be the rate payable from time to time under the [n]ote." Appellant's Brief, Exhibit D, Mortgage, 12/2/1996, at ¶ 23. Thus, the interest rate set forth in the note survived entry of the default judgment. However, as Appellant points out, the note is not contained in the certified record, it was not attached to any pleadings, and there is no interest rate set forth in the mortgage. In its motion to reassess damages, EMC merely set forth a blanket amount for the total sum of post-judgment interest it believed was due "through July 1, 2013." In compounding the problem, neither EMC nor the trial court identified the balance upon which the interest was to be calculated – the total judgment amount or the balance of the principal under the mortgage – or the date from which interest was to be computed. Instead, the trial court entered the order at issue, amending the judgment "to reflect a total judgment amount, including principal balance, interest through July 1, 2013, late charges, legal fees, cost of suit and title, property inspections, mortgage insurance premium, and escrow deficit, of $78,115.71, plus **interest at six percent annum**." Trial Court Order, 8/6/2013. While the trial court states, in its subsequent opinion, that EMC "submitted the original mortgage, the note, [and] a calculation of additional interest consistent with the rate agreed in the mortgage[,]" we are unable to verify this information based upon the record before us. **See** Trial Court Opinion, 11/5/2013, at 6. Based upon all of the foregoing, we conclude that the trial court abused its discretion in awarding additional interest payments

in response to EMC's motion to reassess damages. On remand, the trial court may award post-judgment interest but, in doing so, it shall supplement the record to include the note, as well as a computation of its additional interest award that identifies the applicable interest rate, the operative dates, and the balance upon which the interest is calculated.

We believe that an evidentiary hearing is necessary to develop a record that supports any additional damages that are to be awarded to EMC.[12] We do so because we are reminded that "[g]enerally, default judgments are not favored." ***Atlantic Credit & Finance, Inc. v. Giuliana***, 829 A.2d 340, 343 (Pa. Super. 2003) (citation omitted). It has been stated in regard to default judgments that:

> [t]he purpose of the rules in authorizing the entry of default judgments is to prevent a dilatory defendant from impeding the plaintiff in establishing his claim. **The rules are not primarily intended to provide the plaintiff with a means of gaining a judgment without the difficulties which arise from litigation**….

***Id.*** (emphasis added)*.* The trial court cannot abbreviate the process for modifying the amount of the default judgment when factual issues are present.

---

[12] As previously noted, Appellant relies upon Pa.R.Civ.P. 1037(b)(1) in arguing that EMC must prove its additional damages at a trial. ***Supra***, at 7-8. We note that Rule 1037 applies in cases in which damages are to be calculated **before** default judgment is entered. In this case, EMC is seeking to modify the amount of damages **after** default judgment was entered. Thus, Rule 1037 is not applicable.

Order vacated. Case remanded for an evidentiary hearing to reassess damages in accordance with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/15/2015</u>